[Civ. No. 4288. Third Appellate District.—June 5, 1931.]

CARRIE F. HANCOCK et al., Respondents, v. GEORGE R. CURTIS PAVING COMPANY (a Corporation), Appellant.

John M. Martin, Frank L. Martin, Jr., Albert J. Sherer and Earl E. Howard for Appellant.

Peyton H. Moore for Respondents.

MR. JUSTICE THOMPSON (R. L.) Delivered the Opinion of the Court.—This is an appeal from a judgment for damages for injury to the property of the plaintiffs situated in Los Angeles resulting from the destruction of a building, fence and trees and the dumping of a large quantity of dirt and rocks thereon.

The plaintiffs own a large lot consisting of an acre and a half of land in Los Angeles fronting on Pasadena Avenue and bounded on the east by Sycamore Grove Park. This lot contained a dwelling-house which was constructed close to the intervening line between plaintiffs' lot and Sycamore Grove Park. A side porch overlooked this park. To the rear of the building there was a platform covered with a trellis and an arbor. Back of this arbor there was an outbuilding used as a storeroom. An old fence stood along the dividing line of these properties. A black walnut tree stood at the northeast corner of the dwelling-house near

the property line. At the northwest corner of the property, fronting Pasadena Avenue, there was a board sign reading "Dirt Wanted—Dump on Fill." The lot was substantially level. It had been filled with dirt on the front portion thereof adjoining Pasadena Avenue. At the time of the trespass which is complained of, the dwelling-house was unoccupied.

The defendant is a construction company. It was engaged in laying a 48-inch drain-pipe along the south line of Sycamore Grove Park adjacent to the plaintiffs' property. In the performance of this contract by means of a steam-shovel the plaintiffs' fence above mentioned was destroyed; the storehouse was demolished, the porch and arbor were damaged, the walnut tree was removed and some 4,000 cubic yards of dirt, rocks and debris were dumped upon the rear portion of the lot. A large quantity of dirt was piled against the house and side porch. The walls and floors of the dwelling-house and porch were cracked and strained, and the foundation thereof was impaired. Suit for damages was commenced.

The complaint alleges the foregoing facts and asserts that these acts of the defendant resulted in destroying the drainage of the property and otherwise damaging the property to an extent of $15,000. The defendant failed to demur to the complaint. The essential allegations of the complaint were controverted. The court adopted findings favorable to the plaintiffs. The injury and destruction of the property as above recited was specifically found to be true. The court then finds as a result of such injury and destruction of property and as a consequence of dumping earth and rocks upon the lot that "the drainage of the water from the land was prevented, and the use of said land was interfered with, and the said land belonging to the plaintiffs was greatly damaged and lessened in value in the amount of Fifteen Hundred Dollars". Judgment was rendered accordingly. From this judgment the defendant has appealed.

The appellant contends that the sign which was located at the front of the lot, which read "Dirt Wanted—Dump on Fill," was an invitation for anyone to deposit dirt on the lot; that a compliance with this request was an acceptance of a proposition which constituted the fulfill-

ment of a contract, and that the plaintiffs were therefore precluded from complaining thereof. An indiscriminate deposit of from 4,000 to 6,000 cubic yards of earth and rocks over the entire unoccupied portion of a lot is not warranted by a mere invitation to furnish dirt to fill a depression. The owners of the lot were not asked regarding the quantity or character of the soil which they desired. Neither were they asked where they desired it to be deposited. It appears the only "fill" or depression which had previously existed on the lot was situated at the front of the premises where the sign was located. This depression had been previously filled to the top of the coping which borders on Pasadena Avenue. There is no satisfactory evidence that a "fill" or depression existed on the lot at the time the dirt was deposited thereon. It was an unreasonable construction of the wording of the sign to assume that it authorized the indiscriminate dumping of 4,000 cubic yards of earth upon the lot without ascertaining the location where this soil was desired. It was also presumptuous to assume that the sign authorized the deposit of large quantities of rocks, boulders and other refuse matter. The evidence therefore supports the findings to the effect that the defendant was not warranted in dumping upon the lot the quantity and character of material which it did deposit thereon, or in leaving it piled against the porch and house or scattered over the unoccupied portions of the premises.

It is also asserted the amount of damages which was awarded to the plaintiffs is excessive and unsupported by the evidence. There is no merit in this contention. There is evidence to the effect that the vast quantity of earth and rocks which was deposited on the lot was undesired and detrimental to the value of the property. The line fence was destroyed. The storehouse was demolished. The platform and arbor were damaged. The porch and walls of the house were injured. The walnut tree was removed. The drainage of the lot was impaired. Large quantities of earth and rocks were left piled over the unoccupied portion of the property. The premises were left in an unsightly condition as a result of the acts of the defendant. The sum of money which would be required to restore the premises to the condition in which they existed prior

to the acts complained of would aggregate a considerable amount. The sum of $1500 does not appear to be excessive.

It is finally claimed that the measure of damages upon which the judgment in this case is founded is incorrect.

The measure of damages for the unlawful injury or destruction of buildings, fences or trees under such circumstances as are presented in this case would ordinarily be "the amount which will compensate for the detriment proximately caused thereby". (Sec. 3333, Civ. Code; 24 Cal. Jur. 694, sec. 35.) Under such circumstances the questions to be determined are, what was the value of the property at the time of its destruction? and, what would it reasonably cost to restore the damaged property to the condition in which it existed at the time of the injury thereto? (*Williams* v. *Faria,* 112 Cal. App. 455 [297 Pac. 78]; 17 Cal. Jur. 876, sec. 182; 4 Sutherland on Damages, 3d ed., p. 2976, sec. 1018.) If the injury is to the freehold, the measure of damages is "ordinarily the difference between the fair value of the property immediately before and immediately after the injury." (17 Cal. Jur. 880, sec. 187.) This is particularly true where the detriment is permanent, or where the damages cannot well be expressed in specific items of injury. The correct measure of damages where the injuries complained of affect the freehold as a whole and also at the same time affect the value of separate structures or improvements thereon, is often a subject of doubt and results in an apparent conflict of authorities. This apparent conflict, however, may be reconciled by carefully distinguishing the facts upon which these various cases were determined.

In the present case there is little doubt that it would have been proper to have shown by competent evidence the value of the fence and storehouse which were destroyed at the time of the unlawful acts complained of. It would also have been proper to have shown the cost of repairing and restoring the house, porch and arbor to the same condition which existed prior to the injuries complained of. Apparently this is exactly what the respondents were prevented from doing by the erroneous objections of the appellant, who assumed that the proper measure of damages was the difference between the value of the freehold before and after the injuries complained of.

Plaintiffs attempted to prove the value of the improvements which were destroyed at a time immediately prior to the injuries complained of. Cecil Schilling, who is an architect and structural engineer, was called as a witness by the plaintiff. He was asked: "Can you tell me what would be the reasonable value of this outhouse which you saw there on the property in May . . . 1927? . . . I am asking for the reasonable value of that house (which was destroyed by the defendant) as it stood at the time he saw it." The defendant's objection to this question on the ground that it was incompetent and tended to prove no issue in the case, was sustained. The colloquy which followed between counsel and the court indicates that both the court and counsel for the defendant assumed that the proper measure of damages was the difference between the value of the entire property before and after the injuries complained of. This question was competent. It tended to furnish more specific evidence of the damages sustained by the destruction of the buildings and improvements. The objection to this line of questions was erroneously sustained. The plaintiffs were thus prevented from furnishing the very evidence, the absence of which is now assigned by the appellant as error. This evidence was supplemented by expert testimony that the detriment to the entire property amounted to the sum of approximately $5,000. This evidence was elicited by testimony adduced without opposition of the value of the premises before and after the injuries complained of. The court awarded judgment for less than a third of this estimated amount of damage. The court found that the drainage of the property was damaged by the dumping of earth, rock and debris. The lot was left in an unsightly condition. In a measure the freehold was damaged by the unlawful acts of the defendant. The evidence of the difference between the value of the premises before and after the injuries complained of was not conclusive or complete evidence of the entire detriment, but it was competent. More complete or detailed evidence of the damages sustained to the several specific improvements on the property was prevented by the erroneous objections of the appellant. So long as there is substantial evidence upon which to base the judgment, the appellant may not complain of a lack of more satisfactory evidence which

was excluded upon its own application. Under the circumstances of this case the evidence of the amount of damages which was sustained by the wrongful acts of the appellant is sufficient upon which to sustain the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 3, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1931.