CITIES SERVICE GAS COMPANY, a corporation, Plaintiff in Error, · 

v.

John CHRISTIAN, Defendant in Error.

No. 37535.

Supreme Court of Oklahoma.

Oct. 22, 1957.

O. R. Stites, Gordon J. Quilter, Oklahoma City, Hardin Ballard, Purcell, for plaintiff in error.

George Bingaman, Purcell, for defendant in error.

PER CURIAM.

The plaintiff, John Christian, had a three-year agricultural lease for pasture purposes only on certain lands in McClain County. The defendant, Cities Service Gas Company, procured a pipe line easement across the same lands from the owner and, with the consent of plaintiff, constructed a traversing pipe line in December of 1953. The line was buried below plow depth except for a gate valve excavation of some 8 feet by 14 feet, uncovered, but enclosed by a pipe fence. Plaintiff's petition alleged that in connection with the maintenance and repair of the pipe line, the defendant negligently left some poisonous substances used in repair work upon the premises; that plaintiff's cattle ate of the substances and as a result died. Plaintiff recovered a judgment on the verdict of a jury for damages suffered by the cattle loss, and defendant appeals.

Parties are referred to herein as they appeared in the trial court.

█ Plaintiff's evidence reasonably tends to establish that on February 23, 1955, defendant's workmen, with trucks and equipment, entered the premises and performed certain repairs upon the gate valve enclosure; that plaintiff was at this time pasturing fifty-seven cows, a bull and twenty-two calves on the land; that on the day following completion of the repair by defendant's employees, plaintiff found several dead cattle and within the next day or two had lost twenty cows and eleven calves. Plaintiff caused chemical analysis to be made of the stomach contents of one cow which showed the presence of lead floride, identified in the chemist's report as a poisonous substance used extensively as a rodent poison and considered to be a "violent poison." An investigation to determine the source of the poison and the apparent cause of the deaths developed the following facts: poison from the feed furnished the cattle was excluded; plaintiff found a one-gallon paint bucket containing an orange colored paint a short distance from the gate box where defendant's employees had been working which was of the same type and color as that used by the defendant company and of the color of stenciled letters on a pipe in connection with the gate box. Stencil paper was found on the premises. The lid to the paint bucket

had smudges of black paint thereon, which was the same kind of paint as that used on the gate box. The lid was off the orange paint bucket, which had been turned over, and a scum line therein indicated it had at that time contained approximately one and one-half quarts of paint. There were cattle tracks around the area where the bucket was found, and certain of the cattle, visibly affected but not yet dead, were observed, and the symptoms exhibited by them were described as being, in the opinion of the witnesses, that of cattle subjected to poisoning. A sample of the paint found in the bucket showed it to contain lead. While there was testimony on other circumstances which might be considered to further support plaintiff's case, we believe those referred to are sufficient to support the verdict. Great Lakes Pipe Line Co. v. Smith, Okl., 271 P. 2d 1112. Although the evidence on the part of the defendant company tended to refute plaintiff's proof, we are convinced that from plaintiff's evidence standing alone a reasonable inference can be drawn that the defendant's employees left the can of paint containing lead in the pasture, and that it was overturned spilling its contents, and that plaintiff's cattle died from eating the contents of the can of paint. There is direct evidence that the animals died from lead poisoning. The evidence, although contradictory as to the opposing parties, presented a question of fact for the jury.

The contentions advanced by the defendant are that there was no sufficient, competent, substantial evidence in the record to support the verdict for plaintiff; that the trial court erred in overruling defendant's demurrer to plaintiff's evidence and in refusing to direct a verdict in defendant's favor and in giving certain instructions and refusing others proposed by defendant.

■■ We have had occasion in previous opinions to point out the existence of the legal duty imposed upon the holder of a dominant estate to so use the property as not to injure or damage the servient estate. In the cases of Great Lakes Pipe Line Co. v. Smith, supra; Shell Pipe Line Corpora-

tion v. Curtis, Okl., 287 P.2d 681; Oklahoma Natural Gas Co. v. Pickett, 208 Okl. 671, 258 P.2d 186, we have pointed out the principle involved and to be applied under facts such as exist in this case. We think it is clear in this case, as we stated it to be in Shell Pipe Line Corp. v. Curtis, supra [287 P.2d 685] that:

"* * * under the grant of the easement herein, that defendant owed a duty imposed by law to so use the . property that injury or damage would not result to plaintiff as a result of customary use, maintenance or repair of the dominant estate. * * *"

In paragraph two of our syllabus in that case we stated:

"It is a well settled rule in this state that evidence is sufficient to sustain a judgment if there is any evidence reasonably tending to prove, either directly or immediately, or by permissive inference, the essential facts to sustain the verdict and judgment rendered thereon."

We have already stated our conclusion that the evidence of the case at bar meets such test.

The instructions given by the court fairly covered the applicable provisions of law and presented the issues properly for the consideration of the jury. The complaint made that the trial court erred in refusing certain requested instructions is based largely upon the contention made that the rules stated in Mid-Continent Petroleum Corp. v. Rhodes, 205 Okl. 651, 240 P.2d 95, and similar cases apply. The distinction between the two lines of cases lies in the facts. We think the trial court properly defined the issues.

Affirmed.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative

opinion was written by the Commission, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.