NATURAL GAS PIPELINE COMPANY OF AMERICA, Plaintiff,

v.

Clement COX, Jr. and Don Cox, Defendants.

No. J–C–80–59.

United States District Court, E. D. Arkansas, Jonesboro Division.

June 4, 1980.

Harry L. Ponder, Ponder & Jarboe, Walnut Ridge, Ark., for plaintiff.

John Burris, Burris & Berry, Pocahontas, Ark., for defendants.

## MEMORANDUM OPINION AND INJUNCTION ORDER

### THE PLEADINGS

HENRY WOODS, District Judge.

The plaintiff is a Delaware corporation engaged in the transmission of natural gas. Defendants are owners of a tract of land in Randolph County, Arkansas. On June 5, 1950 defendants gave plaintiff a pipeline right-of-way easement over their property, and three subsurface pipelines were laid through which natural gas is transmitted under high pressure. The agreement contains the following language:

Grantee shall have the right, from time to time, to cut all trees, undergrowth, and other obstructions that, in its judgment, may injure, endanger or interfere with the construction, operation, maintenance, and repair of said pipelines.

Grantee covenants and agrees that it will bury all pipelines constructed hereunder below plow depth and that it will pay to the owner of said land and to any tenant or lessee thereof, as their respective interest may appear, any damages to fences, improvements, growing crops and timber which may be caused by the constructing, maintaining, altering, repairing, replacing, moving or removing of the pipelines hereunder authorized, and/or appliances or appurtenant facilities.

Plaintiff's Complaint alleges that the pipelines were buried at a depth of not less than thirty-six inches below ground level, the latter depth being a requirement contained in regulations promulgated by the Department of Transportation. It is further alleged that the defendants have removed earth from the pipelines so that there is a present cover of only twenty-one inches above the westernmost of the three pipelines beginning 273 feet North of the center line of Arkansas State Highway 304 and extending 210 feet North along the line. Defendants' actions are said to have caused the imminent possibility of an accidental rupture of the line. Plaintiff contends that such a rupture at best would interrupt service to its customers and at worst could cause a major explosion. Plaintiff requests a mandatory injunction directing that defendants restore the soil cover to defendants' westernmost line and that they be permanently enjoined from reducing the cover over plaintiff's lines below the thirty-six inch minimum required by the Department of Transportation. In the alternative the plaintiff asks that defendants be enjoined from interfering with the plaintiff's replacing the cover at defendants' expense. Plaintiff states that the cost of initial replacement is Five Thousand Dollars ($5,000.00) but because the initial replacement will not be stable, future replacement will be necessary at a cost of Fifteen Thousand Dollars ($15,000). Subsequent to filing the Complaint, the plaintiff filed a motion for a preliminary injunction, alleging irreparable injury from defendants' actions. The defendants in their Answer deny that they removed the soil cover and state that any injunction prohibiting them from farming their lands would constitute a deprivation of their property rights without due process of law.

A preliminary injunction hearing was held on May 1, 1980 at which time both parties presented evidence. A preliminary injunction was denied but the case was set for trial on the merits before the Court on May 28, 1980. At this time the Court heard additional testimony and took the matter under advisement.

### FINDINGS OF FACT

1. This Court has jurisdiction of the parties and the requisite jurisdictional amount is present for a diversity case in the U. S. District Court.

2. By deed dated June 15, 1950 the defendants granted to the plaintiff a pipeline easement over the following lands in Randolph County, Arkansas:

All that part of the East Half of the Southwest Quarter of the Southwest Quarter (E½ SW¼ SW¼) of Section 32, that lies South of Pocahontas and O'Kean

Road, Township 19, Range 2 East; all that part of the Southeast Quarter of the Southwest Quarter (SE¼ SW¼) of Section 32 in Township 19, Range 2 East that lies South of the Pocahontas and O'Kean Road, less and except ¾ acre in the form of a right angle triangle in the Northeast corner, thereof. As per Warranty Deed dated 8/26/1946, Book 80, pg. 486.

3. The pertinent portions of said deed are set forth, *supra*.

4. Beginning in the late fall of 1950, the plaintiff laid three pipelines across the land described above.

5. The pipelines were laid in accordance with the easement and were buried to a minimum depth of 36 inches and in some instances to a depth of seven feet.

6. All of the pipelines were laid "below plow depth" in accordance with the terms of the easement.

7. The Department of Transportation requires that all pipelines such as those involved in the case at bar shall be laid to a minimum depth of *30* inches.

8. In the late summer and fall of 1978, the defendants engaged in land levelling operations on the property described above, which resulted in the cover over the westernmost pipeline being reduced to a depth of 21″ over a portion of the line that traversed defendants' property.

9. This reduction in cover over the pipeline has caused the plaintiff to be in violation of the regulations of the U. S. Department of Transportation and presents a substantial risk of damage to the pipeline and its possible rupture.

10. The actions of the defendants constitute a violation of the terms of the easement.

### CONCLUSIONS OF LAW

A primary characteristic of an easement is that its burdens fall upon the possessor of the land from which it issues. This characteristic is expressed in the statement that the land constitutes a servient tenement and the easement a dominant tenement. Restatement of Law, Property, Vol. V, Servitudes, § 450, p. 2901.

The owner of the servient tenement may make any use thereof which is consistent with or not calculated to interfere with the exercise of the easement granted. Tiffany, Law of Real Property, 3d Ed., Vol. 3, § 811. The character and extent of the rights created by a grant of easement is determined by construction of the language of the grant and by the extent of the use made of the dominant tenement at the time of the grant. Tiffany, Law of Real Property, 3d Ed., Vol. 3, § 802. The Supreme Court of Arkansas has said that when an easement is granted for a pipeline across real property, " . . . the rights of the parties are reciprocal and the respective owners must use the way in a manner that will not interfere with the others' right to utilization and enjoyment thereof." *Davis v. Arkansas Louisiana Gas*, 248 Ark. 881, 454 S.W.2d 331, (1970). The Cox brothers had a right under the easement to have the pipeline buried "below plow depth" and had a right to insist that the exercise of the easement should not damage "fences, improvements, growing crops and timber." The record is devoid of proof that plaintiffs violated the easement in any respect whatsoever. The Court of Appeals of this Circuit made a pertinent comment in a recent case: "Therefore Sun had a duty to maintain the pipeline below cultivation depth. It did not have the duty . . . to bury the pipeline at such a depth as to avoid interferences with all possible lawful activities on the land." *Sun Pipe Line Co. v. Altes*, 511 F.2d 280, 284 (8th Cir. 1975). On the other hand the plaintiff had a right under the easement to operate and maintain its pipeline. It had the implied right to operate its line in accordance with applicable Federal regulations. It had the right to object to any changes in the status of the line as originally constructed, which would increase the risk of service interruption or even a major explosion. The defendants have taken action which has materially affected the rights of plaintiff. Plaintiff's covers on its lines have been reduced from a minimum of 36 inches to a minimum of 21 inches over a substantial portion of its westernmost pipeline. Such a reduction of its

cover constitutes an interference with the maintenance and operation of plaintiff's pipeline.

The case of *Potter v. Northern Natural Gas Co.*, 201 Kan. 528, 441 P.2d 802 (1968) is strikingly similar to the case at bar. It has special significance because it was cited with approval by the Court of Appeals in *Sun Pipe Line Co. v. Altes, supra*, an Arkansas diversity case. In *Potter* there was a pipeline easement quite similar to that in the case at bar. Fifteen years after installation of the pipeline, the landowner entered upon a project to level and regrade the land in an effort to increase production but was prevented from completing the project because the pipeline company refused to cover 300 feet of the pipeline at its expense. The court denied the landowner relief:

> It is clear the landowner has the right under the provision to irrigate and farm the land as he did from 1950 to 1965. However, the rights granted and received are to be determined under the grant as originally intended and when the pipeline is in place and the considerations for the easement have been paid and complied with the extent of grantee's interest is fixed and his future liabilities are then limited to the terms of the grant.
> The easement being the dominant tenement is not subject to the will of the possessor of the land. (*Smith v. Harris*, 181 Kan. 237, 247, 311 P.2d 325.)

.    .    .    .    .

> The cost of lowering 300 feet of pipeline was occasioned by the project of the landowner undertaken for his own benefit. The necessity did not arise by reason of an act of God or natural erosion of the surface of the land. To require the pipeline company to pay this expense would have the effect of inserting an additional provision in the original grant requiring the grantee to furnish additional consideration for the rights granted and received by it in 1950.

*Id.* 441 P.2d at 806.

On the basis of the authorities and the Findings of Fact, *supra*, this Court holds that a mandatory injunction is proper.

### INJUNCTION AND ORDER

1. It is ordered that before January 1, 1981 the defendants shall provide a minimum of 30 inches of suitable soil cover over the westernmost of plaintiff's pipeline and that defendant shall conduct their farming or other operations on the tract described herein so as not to permit a reduction in said cover. This deadline should enable defendants to have the work done so as not to interfere with growing crops.

2. It is further ordered that when the work is completed that defendants notify plaintiff or its attorney by registered mail and that agents of plaintiff be permitted to enter defendants' land to make a survey to determine if the pipeline in question has been covered to a suitable depth.

3. In the event this work is not completed by January 1, 1981, the plaintiff is hereby given the right to enter defendants' land and apply the proper cover at the expense of defendants. It is ordered that such entry be made and such work performed without interference on the part of defendants or their agents.